Laura M. **BROWN,** Guardian ad Litem for Danielle Paige Brown, a minor, Plaintiff,

v.

**GEHA–WERKE GmbH, Shredex, Inc., Automated Systems, Inc., and the United States of America, Defendants.**

Civil Action No. 2:98–2605–18.

United States District Court, D. South Carolina, Charleston Division.

Sept. 29, 1999.

---

Jack D. Cordray, The Cordray Law Firm, Charleston, SC, William J. Cook, Terry Edward Richardson, Jr., L. Joel Chastain, Ness, Motley, Loadholt, Richardson & Poole, P.A., Barnwell, SC, for Laura M. Brown, plaintiff.

John F. Kuppens, Lisa Woodbury Caldwell, Carl Belden Epps, III, Nelson Mullins Riley and Scarborough LLP, Columbia, SC, for Geha–Werke GmbH, defendant.

Harvey Brockinton, Jr., Brockinton Brockinton and Kerr, Charleston, SC, for Shredex Inc., defendant.

Stephen Edward Darling, Sinkler and Boyd, Charleston, SC, for Automated Systems Inc., defendant.

Joseph P. Griffith, Jr., United States Attorney's Office, Assistant United States Attorney, Charleston, SC, for U.S., defendant.

Mia Lauren Maness, Mark C. Tanenbaum PA, Charleston, SC, for Stephen K. Brown, third-party defendant.

## ORDER

NORTON, District Judge.

This matter comes before the court on Defendant Geha–Werke's Motion to Dismiss for Lack of Personal Jurisdiction.

### I. JURISDICTIONAL FACTS

1. This products liability case arises out of an injury the infant Plaintiff received when her father, who worked for the United States Navy, took her to work and let her feed paper into a paper shredder located in his office.

2. The paper shredder was manufactured by Defendant Geha–Werke, a corporation organized under the laws of Germany with its principal place of business in Garbsen, Germany. (Brandes Aff. ¶ 2) [1]

---

1. Peter Brandes is the Export Manager for Geha–Werke, a position he has held for over six years. (Brandes Aff. ¶ 1)

3. Defendant Geha–Werke's manufacturing facility is located in Germany, and it has no manufacturing facility or corporate offices in the United States. (Brandes Aff. ¶ 2)

4. Defendant Geha–Werke transacts no business in South Carolina. (Brandes Aff. ¶ 3)

5. No agents or employees of Defendant Geha–Werke are located in this State. (Brandes Aff. ¶ 4)

6. Since 1991,[2] only two agents of Defendant Geha–Werke have visited the United States. Peter Brandes, the company's export manager, visited New York fifteen times on business, and he visited California once. Heinz Krause, Defendant Geha–Werke's general manager, visited New York eight times on business, and he attended exhibitions in Dallas, Texas, and Las Vegas, Nevada. No agent of Defendant Geha–Werke has ever visited South Carolina. (Pl.Ex. 8, Interrogatory Answer No. 4)

7. Defendant Geha–Werke owns no property in this State. (Brandes Aff. ¶ 5)

8. Defendant Geha–Werke does not advertise in South Carolina. (Brandes Aff. ¶ 6)

9. Defendant Geha–Werke is not licensed to do business in South Carolina, nor does it hold itself out as doing business in this State. (Brandes Aff. ¶ 6)

10. Defendant Geha–Werke has not tried to develop a market in this State or solicit customers or business in South Carolina. (Brandes Aff. ¶ 7)

11. Defendant Geha–Werke does not provide any services or advice to customers located in this State, and it maintains no customer relations network for customers in South Carolina. (Brandes Aff. ¶ 7)

12. Defendant Shredex, Incorporated, a distributor of shredders, initiated the idea of doing business with Defendant Geha–Werke. (Brandes Aff. ¶ 8)

13. Pursuant to an agreement between Defendant Shredex and Defendant Geha–Werke, Shredex became the sole and exclusive distributor of the Geha–Werke shredders marketed and sold in the United States under the brand name and trademark, "Shredex." (Pl.Ex.1) [3]

14. All advertising, marketing, and distribution of the shredders was performed by Shredex. (Brandes Aff. ¶ 8)

15. Under the agreement between Defendant Geha–Werke and Defendant Shredex, the distributor agreed to send to the manufacturer "reports at regular intervals on market conditions, activities and prices of the competition, changes in economic legislation and on other matters which a sole distributor is obliged to observe and to report on." (Pl.Ex.1)

16. As a result of the Geha–Shredex agreement, Defendant Geha–Werke has exported 113,543 shredders to Defendant Shredex and its distributors in the United States since 1983. (Pl.Ex. 8, Interrogatory Answer No. 2)

17. Defendant Shredex marketed the shredders manufactured and exported by Defendant Geha–Werke through a number of distributors and dealers throughout the United States, including Defendant Automated Systems, Incorporated. (Pl.Ex.2)

18. Defendant Automated Systems was a GSA contractor that sold Shredex high-security shredders to the United States government and its agencies, including the United States Navy. (Pl.Ex.2)

19. Defendant Automated Systems dealt only with Defendant Shredex; it had nothing to do with Defendant Geha–Werke. (Pl.Ex. 3, Dennis Horton depo. p. 52 ll. 12–14)

20. The shredders Defendant Geha–Werke manufactures are delivered to Defendant Shredex F.O.B. at the seaport

---

**2.** Defendant Geha–Werke does not have records available for visits made prior to 1991.

**3.** Shredex is no longer the exclusive distributor of Geha–Werke shredders in North America. (Michael J. Falco depo. p. 15 ll. 13–22)

Bremerhaven, Germany. (Def. Ex. A to Def.'s Reply Brief, dated Feb. 23, 1999)

21. The shredders are then shipped to ports in the United States in forty-foot containers. (Pl.Ex. 3, Dennis Horton depo. p. 52 ll. 7–22; p. 53 l. 1; Michael J. Falco depo. p. 17 ll. 18–22)

22. The contents of the containers are then delivered to Defendant Automated Systems' warehouse in Springfield, Virginia. (Pl.Ex. 3, Dennis Horton depo. p. 55 ll. 15–18)

23. Inside the sealed containers were the shredders themselves, operating instructions, and other materials from Defendant Geha–Werke, although it was all Defendant Shredex information. (Pl.Ex. 3, Dennis Horton depo. p. 56 ll. 2–8)

24. The shredder involved in this case was ordered by telephone by the Naval Weapons Station in Charleston, South Carolina, on April 17, 1986, and shipped there by Automated Systems via common carrier on the same day. (Pl.Ex.7)

25. The incident involving this shredder occurred on October 7, 1995, at the Charleston Naval Base.

## II. PROCEDURAL HISTORY

On September 4, 1998, Plaintiff filed this suit against the above-named Defendants, alleging causes of action under the theories of negligence, breach of warranty, strict liability, and breach of post-manufacture/sale duty. On December 1, 1998, Defendant Geha–Werke filed a Motion to Dismiss for Lack of Personal Jurisdiction. The court subsequently heard and granted Defendant's motion on March 3, 1999. This Order simply outlines the court's analysis more fully than as dictated on the record at the hearing.

## III. LAW/ANALYSIS

### A. Burden of Proof

 The Fourth Circuit has ruled that "[w]hen a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus

raised is one for the judge, with the burden on the plaintiff ultimately to *prove the existence of a ground for jurisdiction by a preponderance of the evidence."* Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989) (emphasis added). However, at the pretrial stage, Plaintiff "need only make a prima facie showing by pleadings and affidavits." *Allen v. Columbia Fin. Management, Ltd.,* 297 S.C. 481, 377 S.E.2d 352, 354 (1988); *see Combs,* 886 F.2d at 676; *Umbro U.S.A. v. Goner,* 825 F.Supp. 738, 739 (D.S.C.1993). Indeed, the Fourth Circuit has held that when a district court decides a pretrial personal jurisdiction dismissal motion *without an evidentiary hearing,* Plaintiffs need only prove a *prima facie* case of personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993). Although this court decided the issue of personal jurisdiction without an evidentiary hearing, it did not do so on the pleadings and affidavits alone. Instead, the parties have engaged in jurisdictional discovery and offered evidence beyond the pleadings and affidavits. Consequently, the jurisdictional information before the court is more like that presented at an evidentiary hearing and less like the jurisdictional allegations of a complaint. As such, Plaintiff must establish personal jurisdiction by a preponderance of the evidence.[4] *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984) ("[T]he plaintiff must ... prove, following discovery, either at a pre-trial hearing or at trial, that jurisdiction exists by a preponderance of the evidence. Given that the district court permitted substantial discovery, [the plaintiff] must now be held to the preponderance burden."); *Hvide Marine Int'l, Inc. v. Employers Ins. of Wausau,* 724 F.Supp. 180, 182 (S.D.N.Y.1989) ("[I]f the plaintiffs are given the opportunity to conduct jurisdictional discovery, the stricter preponderance of the evidence standard applies.").

---

4. The court notes, however, that on the facts as presented to this court, Plaintiff could not even establish a prima facie showing of per-

sonal jurisdiction over Defendant Geha–Werke.

## B. Specific Jurisdiction

■ This court finds that it cannot assert specific in personam jurisdiction over Defendant Geha–Werke. "Specific jurisdiction involves the exercise of personal jurisdiction over the defendant in an action which arises out of the defendant's contact with the forum." *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir. 1989). When evaluating a challenge to an assertion of specific in personam jurisdiction obtained under a state's long arm statute, this court engages in a two-step analysis. *See, e.g., Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). First, the court must determine whether the long-arm statute authorizes the exercise of jurisdiction under the facts presented. *See id.* Second, if the statute so authorizes, the court must then determine whether the statutory assertion of personal jurisdiction is consistent with due process. *See id.*

### 1. South Carolina's Long–Arm Statute

■ In order for this court to exercise personal jurisdiction over a non-resident defendant, the defendant's conduct must fall within one of the long-arm statute's enumerated categories of conduct. *See* S.C.Code Ann. § 36–2–803 (1976). Section 36–2–803 provides, in pertinent part,[5] that

(1) [a] court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or

. . . .

(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

*Id.* Giving Plaintiff every benefit of the doubt, she has produced sufficient evidence that Defendant Geha–Werke had a reasonable expectation that some of the shredders it manufactured would be, and in fact were, used in this State, thus satisfying subsection (h) of the long-arm statute. First, Defendant Geha–Werke manufactured shredders that were distributed by Shredex in the United States pursuant to an agreement between the two companies. Defendant Geha–Werke thus had a reasonable expectation that the shredders would be used in this country. Second, Defendant Geha–Werke undoubtedly knew who was buying its shredders when it received reports on market conditions, activities, and prices of the competition. Aware of market conditions, Defendant Geha–Werke must also have had a reasonable expectation that its high-security shredders, used by the United States government and in particular the military, would be used in a state such as South Carolina, which, until lately, had a disproportionately high number of military installations. As a result, this court finds that Defendant Geha–Werke had a reasonable expectation that some of its shredders would be used in this State. For this reason, the court may exercise personal jurisdiction over Defendant Geha–Werke under the terms of the long-arm statute.

### 2. Due Process Analysis

■ After establishing that Defendant Geha–Werke's conduct barely fits within one of the enumerated subsections of the long-arm statute, Plaintiff must also demonstrate that this court's exercise of in personam jurisdiction over the German company comports with the Due Process Clause. Under the due process analysis, the court must consider whether a defendant that is not present in the forum has sufficient minimum contacts with the state "such that the maintenance of the suit does

5. According to Plaintiff, the provisions quoted are the two that are applicable in this case.

not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Thus, the due process analysis consists of two branches. The "minimum contacts" branch focuses on the connection or affiliation of the nonresident defendant with the forum state and the relationship between that connection and the litigation. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "fairness" branch analyzes whether the assertion of personal jurisdiction would be fair in light of five enumerated factors. *See id.* at 476–77, 105 S.Ct. 2174.

### a. Minimum Contacts Analysis

■ To determine whether Defendant Geha–Werke had minimum contacts with South Carolina, the court should consider whether the company created a substantial connection to the forum state by purposefully directing its activities at South Carolina, or whether it otherwise invoked the benefits and protections of the laws of this State, so that it should reasonably have anticipated being haled into court in this State. *See Burger King Corp.,* 471 U.S. at 474–75, 105 S.Ct. 2174; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945–46 (4th Cir. 1994). The touchstone of this minimum contacts analysis is that the out-of-state company must "have engaged in some activity purposefully directed toward the forum state." *Lesnick,* 35 F.3d at 943.

■ In a products liability case such as this, the manufacturer's minimum contacts with the forum state may be demon-strated by showing that it engaged in some "additional conduct" beyond merely placing the product into the stream of commerce. *See id.* at 943–47. In *Lesnick,* the Fourth Circuit, relying on a plurality opinion of the United States Supreme Court, rejected the notion that in products liability actions a plaintiff could establish personal jurisdiction over a nonresident defendant simply by demonstrating that the defendant placed the product into the stream of commerce with the expectation or the awareness that the product may end up in the forum state. *See id.* at 944–46; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (O'Connor, J.) (plurality opinion); *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 658 (4th Cir.1989) ("A 'stream of commerce' theory of personal jurisdiction ... cannot supplant the requirement that a defendant in some way purposefully avail itself of forum law."). In *Asahi,* Justice O'Connor stated that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus.Co., Ltd.,* 480 U.S. at 112, 107 S.Ct. 1026. Instead, some "additional conduct" is required to demonstrate an intent or purpose to serve the market in the forum state. *See id.* Such additional conduct may include "[1] designing the product for the market in the forum State, [2] advertising in the forum State, [3] establishing channels for providing regular advice to customers in the forum State, or [4] marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." [6] *Id.*

■ No evidence of such additional conduct has been presented to the court by Plaintiff. First, Plaintiff alleges that Defendant Geha–Werke designed and manu-

---

**6.** Plaintiff also argues that Defendant Geha–Werke has invoked the benefits and protections of the laws of South Carolina because it might someday bring suit in South Carolina to enforce a patent or trademark. (Pl.Memo. in Opp. at 24) This argument need not detain the court long. Plaintiff's burden of establishing personal jurisdiction simply cannot be discharged by suggestions, possibilities, speculation, conjecture, or surmise.

factured the shredder in this case specifically for the use of the military and other government agencies. That may be. However, this is a far cry from designing the product for the South Carolina market. This court cannot equate the designing of a shredder for the military as the functional equivalent of designing a product for the market in South Carolina simply because the military has situated a disproportionate number of military installations in the halcyon environs of this fine State. The eroding legacy of the late L. Mendel Rivers cannot be used as a substitute for "additional conduct."

■ Second, the only competent evidence in the record is that Defendant Geha–Werke has not advertised in the forum state. (Brandes Aff. ¶ 6) In a throwaway argument in footnote eight on page twenty-four of a thirty-two page memorandum, Plaintiff argues that

> by advertising its products, including high-security shredders, on its Internet website and also by providing its Internet e-mail address on its website, Geha has, in effect, advertised its high-security shredders and other products in South Carolina. Just because the website and e-mail address are available to virtually everyone else on earth does not mean that Geha was *not* advertising in South Carolina.

(Pl.Memo. in Opp. at 24 n. 8) Although the law of personal jurisdiction in cyberspace is still in its infancy, it is clear that Plaintiff has not established that Defendant Geha–Werke should be subject to personal jurisdiction in this State based on its World Wide Web site. *See ESAB Group, Inc. v. Centricut, LLC,* 34 F.Supp.2d 323, 329–31 (D.S.C.1999); *see also Mink v. AAAA Development LLC,* 190 F.3d 333, 335–37 (5th Cir.1999); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416–20 (9th Cir.1997); *Coastal Video Communications, Corp. v. The Staywell Corp.,* 59 F.Supp.2d 562, 569 (E.D.Va.1999); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123–26 (W.D.Pa.1997). "Courts examining how the Internet re-

lates to personal jurisdiction have found that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" *ESAB Group, Inc.,* 34 F.Supp.2d at 330 (*quoting Zippo Mfg. Co.,* 952 F.Supp. at 1124).

Relying heavily on the *Zippo* decision, the *ESAB Group* court outlined the "sliding scale" of Internet contacts used for personal jurisdiction analysis in the following manner:

> On one end of the spectrum are "passive" web sites in which the defendant has done nothing more than advertise its product on the Internet. In most cases dealing with this type of activity, courts have found that personal jurisdiction cannot be exercised. On the opposite end of the spectrum are "interactive" web sites in which individuals enter into contracts with defendants via the Internet and download, transmit or exchange files. In these cases, courts have found the exercise of personal jurisdiction proper. In the middle, there are web sites that allow a party to exchange information with a host computer. In such instances, jurisdiction must be determined by examining "the level of interactivity and commercial nature of the exchange of information."

*Id.* (*quoting Zippo Mfg. Co.,* 952 F.Supp. at 1124). According to Plaintiff, Defendant Geha–Werke's web site advertises its product and provides its Internet e-mail address. Consequently, the web site appears to fall into the "passive" web site category of cases, which would preclude the assertion of personal jurisdiction based on its web site. Indeed, "no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state." *Cybersell, Inc.,* 130 F.3d at 418.

Nevertheless, despite the neat categorizations of "passive" and "interactive," the *ESAB Group* court found that "merely categorizing a web site as interactive or

passive is not conclusive of the jurisdictional issue." *Id.* Instead, "the critical issue for the court to analyze is the nature and quality of commercial activity conducted by an entity over the Internet in the forum state." *Id.* The record before this court does not reflect that Defendant Geha–Werke conducted any commercial activity over the Internet in South Carolina. Plaintiff submitted no evidence that any South Carolina resident visited Defendant Geha–Werke's web site, other than the staff of Plaintiff's counsel's law firm. Moreover, no evidence was presented that any South Carolina resident purchased Geha–Werke products over the Internet or purchased such products based on any web site advertisement. Finally, Plaintiff produced no evidence that Defendant Geha–Werke has done anything to encourage South Carolina residents to visit the web site or that this web site was directed at South Carolina any more than any other place in the world. Consequently, this court finds that Geha–Werke's web site cannot provide the basis for an assertion of personal jurisdiction over Defendant Geha–Werke.

Third, Plaintiff has failed to produce evidence that Defendant Geha–Werke ever serviced customers in this state or provided them with regular advice. The only competent evidence in the record comes from the affidavit of Peter Brandes in which he states that "Geha–Werke provides no services or advice to consumers located in South Carolina and maintains no customer relations network for customers in South Carolina." (Brandes Aff. ¶ 7)

■ Fourth, although Shredex reported orally to Defendant Geha–Werke on "market conditions, activities and prices of the competition, changes in economic legislation and on other matters," Plaintiff has failed to produce any evidence that Geha–Werke was the driving force behind the marketing strategy, that it, instead of Shredex, actually marketed the product. To the contrary, the only competent evidence in the record is that Defendant Geha–Werke has not tried to develop a market in this State or solicit customers or business in South Carolina. (Brandes Aff. ¶ 7)

For the foregoing reasons, Plaintiff has not carried her burden of demonstrating that Defendant Geha–Werke had minimum contacts with the State of South Carolina as she failed to submit competent evidence that the German company had engaged in "additional conduct" beyond simply placing the product in the stream of commerce.

#### b. Reasonableness Factors

■ The Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over a nonresident defendant when the exercise of that jurisdiction would violate

> traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies.

*Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 946 (4th Cir.1994). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). However, even if these factors weighed in favor of the reasonableness of asserting personal jurisdiction in this case, the court has been cited no cases holding that such a finding obviates the necessity of establishing at least minimum contacts, even if those contacts are slim. Because this court has found a complete paucity of minimum contacts, the reasonableness factors of the second prong of the Due Process analysis cannot assist Plaintiff in establishing personal jurisdiction.

As a result, this court cannot exercise specific in personam jurisdiction over Defendant Geha–Werke.

### C. General Jurisdiction

This court finds that it also cannot exercise general jurisdiction over Defendant Geha–Werke. "General jurisdiction ... involves the exercise of personal jurisdiction over a defendant in an action which does not arise out of a defendant's contact with the forum." *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir. 1989). Pursuant to South Carolina's long-arm statute, a court in this state may assert general jurisdiction if the defendant has an "enduring relationship" with the forum state. *See* S.C.Code Ann. § 36-2-802 (1976). A defendant has an enduring relationship with South Carolina if it is "domiciled in, organized under the laws of, doing business, or maintaining ... its principal place of business in this State." *Id.* It is undisputed that Defendant Geha–Werke is not domiciled in this State, nor is it organized in this State. (Brandes Aff. ¶¶ 2, 4) Moreover, its principal place of business is in Germany. (Brandes Aff. ¶ 2) Finally, even if this court were to find that it was somehow "doing business" in this State, Defendant Geha–Werke's complete lack of contacts with this State precludes a finding that it had "continuous and systematic" contacts with South Carolina, so that the assertion of general in personam jurisdiction would violate the Due Process Clause. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). As a result, this court finds that it is without the power to assert general in personam jurisdiction over Defendant Geha–Werke.

### IV. CONCLUSION

Plaintiff has not produced sufficient evidence to establish that the German company purposefully directed any activities toward the State of South Carolina, nor did Plaintiff demonstrate that the company has "continuous and systematic" contacts with this State. As a result, this court finds that there is insufficient evidence to support its exercise of specific or general jurisdiction over Defendant Geha–Werke.

It is therefore,

**ORDERED,** that Defendant Geha–Werke's Motion to Dismiss for Lack of Personal Jurisdiction be **GRANTED.**

**AND IT IS SO ORDERED.**