Gary VINTEN, Plaintiff,

v.

**JEANTOT MARINE ALLIANCES, S.A., Jeantot Marine Alliaura, S.A., and Groupe Alliaura Marine, Defendants.**

No. C/A 2:99–3660–18.

United States District Court,
D. South Carolina,
Charleston Division.

March 13, 2002.

Marvin D. Infinger, George E. Campsen, Jr., Charleston, SC, for plaintiff.

Wade H. Logan, III, Charleston, SC, for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court on Groupe Kirie, S.A.'s Motion to Set Aside the Default Judgment.[1] The court heard oral argument on January 17, 2002.

## I. Background

### A. Defendants

Alliaura Marine was a French business entity with its principal place of business in France. (Bocquillon Second Supp.Aff. ¶ 2). In 1996, Alliaura Marine purchased the assets of a bankrupt company known as Jeantot Marine through the French Commercial Court. (Bocquillon Aff. ¶ 5;[2] Def's Suppl.Mem. in Supp. of Motion to Set Aside Default Exh. B, C). Alliaura Marine had no relationship with Jeantot Marine prior to purchasing its assets. (Bocquillon Aff. ¶ 5). In March 2000, Alliaura Marine ceased to exist as a business entity after a merger with another company. (Bocquillon Aff. ¶ 9). The merged companies now operate as a corporation named Groupe Kirie.[3] (Bocquillon Aff. ¶ 9).

---

1. Groupe Kirie, S.A. ("Groupe Kirie") is the successor in interest to defendant Alliaura Marine, S.A. ("Alliaura Marine"). Groupe Kirie notes that Alliaura Marine is incorrectly identified in the caption as Groupe Alliaura Marine. (Def's Mem. in Supp. of Motion to Set Aside Default at 1).

2. Pierre Bocquillon's affidavit can be found in the Reply to Plaintiff's Mem. in Opp.Exh. D.

3. In March 2001, a separate and distinct company began doing business under the name S.A. Groupe Alliaura Marine but that entity did not purchase assets or liabilities from

## B. Procedural Background

This matter was originally filed as a maritime and admiralty tort claim. Plaintiff, a resident of Australia, sought damages allegedly resulting from an accident on a catamaran named "Forty Roses," which was anchored at a pier in Charleston, South Carolina. (Complaint at 2). Plaintiff alleged that all of defendants collectively manufactured the "Forty Roses" and placed it into the stream of commerce. (Complaint ¶ 7).

Although the Complaint was originally filed on November 4, 1999, service was not attempted on any of defendants until March 13, 2000. (Infinger Aff. in Supp. of Request for Entry of Default ¶ 4). Plaintiff's counsel retained the services of APS International, Ltd. to assist with the service of defendants in France. (Infinger Aff. in Supp. of Request for Entry of Default ¶ 6). On March 13, 2000, a copy of the Summons and Complaint was delivered to Alliaura Marine in Les Sables d'Olonne, France. (Bocquillon Aff. ¶¶ 2, 3). The Summons and Complaint were served pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters[4] ("Hague Convention") by a "huissier"—a person authorized under French law to effect service of process. (Pl's Mem. in Opp.Exh. A). The documents served upon Alliaura Marine were in French and English and contained an explanation of how and when to respond, as well as the address and phone number of the huissier. (Pl's Mem. in Opp.Exh. A).

Alliaura Marine did not respond within the prescribed twenty days, and on October 31, 2000, plaintiff sought an entry of default against all defendants. On May 8, 2001, a default judgment for $2,029,886.00 was entered by the court as to all defendants, and notice of that judgment was faxed to Groupe Kirie. (Bocquillon Aff. ¶ 10). Groupe Kirie did not respond. (Bocquillon Aff. ¶ 11). After plaintiff petitioned the court for an injunction and an order allowing discovery to attempt to satisfy the judgment, Groupe Kirie responded by filing this motion.

## II. Legal Analysis

Groupe Kirie is seeking relief from the default judgment under Rule 60(b)(1) and (4). Under Rule 60(b), "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding" based upon six potential grounds. Fed.R.Civ.P. 60(b). Groupe Kirie claims that the judgment is void for lack of personal jurisdiction and relief should be granted under Rule 60(b)(4). (Def's Motion to Set Aside Default at 1). In the alternative, Groupe Kirie asserts that even if the judgment is not void, relief should be granted under Rule 60(b)(1). (Def's Motion to Set Aside Default at 1–2). Finally, Groupe Kirie argues that it has satisfied all of the threshold requirements for bringing a motion under Rule 60(b). (Def's Mem. in Supp. of Motion to Set Aside Default at 5).

Plaintiff argues that this court does have personal jurisdiction over Groupe Kirie and that Groupe Kirie has failed to meet even the threshold requirements for bringing a motion under Rule 60(b). (Pl's Mem. in Opp. at 5–6).

---

Jeantot Marine. (Bocquillon Aff. ¶ 15). S.A. Groupe Alliaura Marine did not exist at the time this lawsuit was filed in November 1999 or when the pleadings were delivered to Alliaura Marine. (Bocquillon Aff. ¶ 16).

4. Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

## A. Void Judgment—Rule 60(b)(4)

Groupe Kirie argues that it is entitled to relief from the default judgment pursuant to Rule 60(b)(4) because this court lacks personal jurisdiction. (Def's Mem. in Supp. of Motion to Set Aside Default at 12). In order for a court to validly exercise personal jurisdiction over a non-resident defendant, a statute must authorize the service of process, and the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993). "South Carolina has interpreted its long-arm statute to extend personal jurisdiction to the constitutional limits imposed by federal due process," and therefore this court's "inquiry must focus on due process." *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002).

In determining whether the exercise of personal jurisdiction comports with due process, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Once minimum contacts have been established, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " [5] *Id.* at 476, 105 S.Ct. 2174.

The Supreme Court has found that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations omitted). The Court has noted that " 'it is essential in each case that there be some act by which the *defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)) (emphasis added). The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Id.* (internal citations omitted). Due process is satisfied, however, "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

In this case, Groupe Kirie does not have minimum contacts with South Carolina. Groupe Kirie transacts no business in South Carolina, and none of its agents or employees are in South Carolina. (Bocquillon Supp.Aff. ¶¶ 6, 7).[6] Since 1996, no agents of Groupe Kirie or Alliaura Marine have visited South Carolina for business purposes. (Bocquillon Supp.Aff. ¶ 8). Further, Groupe Kirie owns no property in

---

**5.** Plaintiff did not state whether he was claiming that this court has general or specific jurisdiction over Groupe Kirie. The Fourth Circuit has found that even though specific jurisdiction does not require the continuous and systematic contacts required for general jurisdiction, the defendant must still have "purposefully directed his activities at residents of the forum, and the litigation results from injuries arising out of those activities." *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1130 (4th Cir.1986) (internal citations and quotation marks omitted).

**6.** This affidavit can be found in the Reply to Plaintiff's Mem. in Opp.Exh. F.

this state, does not advertise here, is not licensed to do business in South Carolina, does not hold itself out as doing business here, does not provide any services or advice to customers in this state, and does not maintain a customer relations network for customers in this state. (Bocquillon Supp.Aff. ¶¶ 9–13).

The Catamaran Company, located in Florida, is the exclusive distributor of Groupe Kirie catamarans, which it markets and sells in the United States under the brand name "Privilège." (Bocquillon Supp.Aff. ¶ 14). The Catamaran Company performed all advertising, marketing, and distribution of "Privilège" catamarans in the United States. (Bocquillon Supp.Aff. ¶ 15). As a result of the distribution agreement, Groupe Kirie has sold a total of 23 "Privilège" catamarans exclusively to The Catamaran Company. No sales have been made to any other residents of the United States. (Bocquillon Supp.Aff. ¶ 16). Alliaura Marine and Groupe Kirie have never sold a "Privilège" catamaran to a resident of South Carolina.[7] (Bocquillon Supp.Aff. ¶ 17).

In response, plaintiff does not contest any of the evidence presented by Groupe Kirie but instead argues that Groupe Kirie's website as well as its national advertisement provides the necessary minimum contacts for personal jurisdiction.[8] Further, plaintiff argues that Groupe Kirie has waived its personal jurisdiction defense. The court finds plaintiff's arguments unpersuasive.[9]

---

**7.** Plaintiff has also not presented any evidence that The Catamaran Company has any contacts with South Carolina.

**8.** Plaintiff stated: "The limited number of boat[s] sold, along with the interactive website, along with the periodical advertisements, establish an appropriate basis for personal jurisdiction." (Pl's Mem. in Opp. at 6).

### 1. Groupe Kirie's Website

Plaintiff argues that Groupe Kirie's website constitutes sufficient contacts with South Carolina for personal jurisdiction. (Pl's Mem. in Opp. at 6). The Fourth Circuit has not directly addressed when a website can satisfy the minimum contacts required for personal jurisdiction. However, in dicta, the court noted that it would be hesitant to exercise personal jurisdiction based solely on a website that, although partially interactive, only invited visitors to the site to e-mail questions and information requests. *Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 218 n. 11 (4th Cir.2001). In *Nolan*, the court cited approvingly to *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir.1999), where the Fifth Circuit found no personal jurisdiction based on a website, even though the website provided visitors with a printable mail-in form, a toll-free telephone number, and the defendant's mailing address.

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), the district court established a sliding scale for determining when personal jurisdiction could be based on a website. The court noted that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. The court stated:

> This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are

---

**9.** Groupe Kirie also argues that service of process was improper and that relief can be granted pursuant to Rule 60(b)(1). (Def's Mem. in Supp. of Motion to Set Aside Default at 6, 19). However, as the court concludes that the judgment is void for lack of personal jurisdiction, there is no need to address these other arguments.

situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 1124. While numerous courts have found this sliding scale analysis helpful, *see, e.g., Millennium Enter., Inc. v. Millennium Music, LP*, 33 F.Supp.2d 907, 916 (D.Or.1999); *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 330 (D.S.C. 1999); *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F.Supp.2d 537, 539 (E.D.Pa.1999), courts have also recognized that, regardless of a website's passivity or interactivity, the essential question remains the same—did the defendant purposefully direct activity at the forum. *See, e.g., Brown v. Geha–Werke GmbH*, 69 F.Supp.2d 770, 777–78 (D.S.C.1999).

In *ESAB Group*, the court stated that "[g]eneral in personam jurisdiction must be based on more than a defendant's mere presence on the Internet even if it is an 'Interactive' presence." 34 F.Supp.2d at 330. "Rather, the critical issue for the court to analyze is the nature and quality of commercial activity *actually conducted by an entity over the Internet in the forum state.*" 34 F.Supp.2d at 330–31 (emphasis added). Concurring, the court in *Millennium Enterprises* found:

> However, the court finds that the middle interactive category of Internet contacts as described in *Zippo* needs further refinement to include the *fundamental requirement of personal jurisdiction: 'deliberate action' within the forum state* in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state.

33 F.Supp.2d at 921 (emphasis added).

Many courts have concluded that, absent any other actions taken by the defendant directed at the forum, an interactive website alone will not establish minimum contacts for purposes of personal jurisdiction. *See, e.g., Millennium Enter.*, 33 F.Supp.2d at 913, 920–22 (finding that a website through which persons could purchase compact discs, request franchising information, and join a discount club was not basis for personal jurisdiction because no actions purposefully directed at forum); *ESAB Group, Inc.*, 34 F.Supp.2d at 330 (finding website with on-line order form insufficient to establish minimum contacts because no action directed at forum); *Origin Instruments Corp. v. Adaptive Computer Sys., Inc.*, 1999 WL 76794 *2 (N.D.Tex.1999) ("While an internet web site can certainly be relevant to a minimum contacts analysis, personal jurisdiction is not found unless the defendant does 'something more' that indicates it purposefully directed its activities toward the forum state.").[10]

---

10. Some earlier cases did find that the mere presence of a website, without more, was enough to subject a defendant to personal jurisdiction in the forum where the website could be accessed. *See, e.g., TELCO Communications v. An Apple A Day*, 977 F.Supp. 404, 405 (E.D.Va.1997); *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 165 (D.Conn. 1996). However, as case law in this area has developed, the majority of courts have reject-

In *Brown*, this court noted that the defendant had not conducted any activity over the Internet in South Carolina, and there was no evidence that anyone in South Carolina other than the plaintiff's lawyers had accessed the website. There was also no evidence that any South Carolina resident had purchased any of the defendant's products based on the website advertisement or that the website was directed at South Carolina any more than any other place. 69 F.Supp.2d at 778. This court concluded that the plaintiff had failed to establish minimum contacts. *Id.*

In this case, as in *Brown*, plaintiff has failed to show that Groupe Kirie's website provides a basis for personal jurisdiction over Groupe Kirie. Groupe Kirie's website has some degree of interactivity, as it provides a form for users to fill out to request additional information and an e-mail link. (Pl's Mem. in Opp.Exh. C). However, there is no evidence that Groupe Kirie conducted any commercial activity through its Internet site. Further, plaintiff has not presented any evidence that Groupe Kirie directed its website at South Carolina residents or that it is attempting to solicit business in South Carolina via its website. There is also no evidence that Groupe Kirie has done anything to encourage South Carolina residents to visit the website. Finally, there is no evidence that anyone in South Carolina, other than plaintiff's counsel, visited Groupe Kirie's website or that anyone in South Carolina ever purchased Groupe Kirie's products over the Internet or based upon the website advertising. Accordingly, Groupe Kirie's website does not provide a valid basis for the exercise of personal jurisdiction.

**2. Groupe Kirie's Advertisement**

■ Plaintiff also claims that Groupe Kirie's periodical advertisement subjects it to personal jurisdiction in South Carolina. As evidence of this, plaintiff attached a one-page advertisement from a 1997 English magazine called *Multihulls*, which is distributed in ninety-seven countries, including the United States. (Pl's Mem. in Opp.Exh. D). Plaintiff also presented evidence that The Catamaran Company advertises in most of the major boating magazines, such as *Cruising World* and *Sail Magazine*. (Def's Reply Mem.Exh. G).

First, in this case, Groupe Kirie does not advertise in the United States. All advertising of "Privilège" catamarans in the United States is done by The Catamaran Company. (Bocquillon Supp.Aff. ¶ 15). Further, even considering the advertising of "Privilège" products by The Catamaran Company, personal jurisdiction is still improper. Plaintiff has not presented any evidence that the advertisements were directed at South Carolina residents or that South Carolina residents purchased Groupe Kirie's products as a result of the advertisements. As a result, these advertisements by Catamaran Company made in some national trade magazines is insufficient to show that Groupe Kirie purposefully directed activity at this forum. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199–1200 (4th Cir.1993); *see also Jeffers v. Wal–Mart Stores, Inc.*, 152 F.Supp.2d 913, 923 (S.D.W.Va.2001) (stating that when defendant had website with low level of interactivity, the use of a nationwide toll-free number, and the occasional use of advertising in national trade journals did not add enough to defendant's conduct to satisfy the requirements of due

ed this conclusion. *See, e.g., GTE New Media Serv. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C.Cir.2000) ("Additionally, personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."); *Millennium Enter.*, 33 F.Supp.2d at 915; *Origin Instruments Corp.*, 1999 WL 76794 *2.

process); *Hamilton v. Accu–Tek*, 32 F.Supp.2d 47, 70, 70 n. 30 (E.D.N.Y.1998) ("[A]dvertisements placed in national publications such as trade magazines have been held insufficient to support" either specific or general jurisdiction.).

### 3. Waiver of Jurisdiction

■ Finally, plaintiff argues that Groupe Kirie has waived its personal jurisdiction defense. (Pl's Mem. in Opp. at 6). Plaintiff asserts that Groupe Kirie "had sufficient notice of the proceeding and sufficient admonition concerning appropriate protections to take in the face of the action." (Pl's Mem. in Opp. at 7). Plaintiff states that under Federal Rule of Civil Procedure 12(h)(1) Groupe Kirie has waived its right to object.

The Fourth Circuit, however, has already rejected this argument. *See Foster v. Arletty 3 Sarl*, 278 F.3d 409 (4th Cir. 2002). In *Foster*, the court noted that "Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance." *Id.* at 413–14. The court concluded that where the defendants "did not appear in the South Carolina action prior to filing their motion to vacate judgment," they did not waive their personal jurisdiction defense. *Id.* at 414. In this case, as in *Foster*, Groupe Kirie did not make an ap-

pearance prior to this motion, and Groupe Kirie has therefore not waived its right to assert this defense.[11]

### B. Threshold Requirements

■ Plaintiff also argues that Groupe Kirie has failed to establish the threshold requirements for bringing a Rule 60(b) motion. (Pl's Mem. in Opp. at 5). The Fourth Circuit has found that a party must satisfy four threshold requirements in order to bring a motion under Rule 60(b). These include: (1) timeliness; (2) a meritorious defense; (3) a lack of unfair prejudice to the opposing party; and (4) exceptional circumstances. *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir.1993). Both parties spent considerable time showing why these requirement had or had not been met. However, after reviewing Fourth Circuit case law specifically relating to Rule 60(b)(4) motions, this court concludes that the threshold requirements generally applicable to Rule 60(b) motions are not applicable to Rule 60(b)(4) motions. Moreover, even if the threshold requirements are applicable, in the context of this Rule 60(b)(4) motion, they have been met.

#### 1. Threshold Requirements Not Applicable to Rule 60(b)(4)

■■ Unlike other Rule 60(b) motions, which are reviewed under the abuse of discretion standard, the Fourth Circuit reviews Rule 60(b)(4) motions *de novo.*[12] *See*

---

**11.** Plaintiff also argues that because it has established that Groupe Kirie has succeeded to Jeantot Marine's liability, "jurisdiction over Jeantot Marine, which has not contested jurisdiction, is imputed to" Groupe Kirie. (Pl's Mem. in Opp. at 6). However, there is no indication that Jeantot Marine, a French company, has consented to this court's jurisdiction, and plaintiff has not presented any evidence that this court would have personal jurisdiction over Jeantot Marine. According to the court's records, Jeantot Marine has not submitted a response in this case. Further,

plaintiff has not established that Groupe Kirie is a successor in interest to Jeantot Marine.

**12.** Recent unpublished opinions of the Fourth Circuit have reiterated the use of *de novo* review for Rule 60(b)(4) motions. *See Garcia Fin. Group, Inc. v. Virginia Accelerators Corp.*, 3 Fed.Appx. 86, 87 (4th Cir.2001) (Table); *Girardi v. Heep*, 203 F.3d 820, 2000 WL 1287 at *2 (4th Cir.1999) (Table); *Choice Hotels Int'l v. Bonham*, 125 F.3d 847, 1997 WL 600061 at *1 (4th Cir.1997) ("Generally, we review the denial of a motion for relief from

*Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 107 (4th Cir.1979) (stating that motions "under 60(b) on any ground other than that the judgment is void" are reviewed for abuse of discretion). The Fourth Circuit has explained that "any judgment entered against a defendant over whom the court does not have personal jurisdiction is void.... Whether the district court correctly determined that it lacked personal jurisdiction is a question of law subject to de novo review." *Koehler v. Dodwell*, 152 F.3d 304, 306–07 (4th Cir.1998); *see also Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1136 (4th Cir.1984); *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984).

All other circuits also use *de novo* review with regard to Rule 60(b)(4) motions. *See, e.g., Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir.1998); *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 423 (7th Cir. 1998) ("We review denial of a Rule 60(b)(4) motion *de novo*."). In *Carter*, the court explained that when a Rule 60(b) motion "is based on a void judgment under rule 60(b)(4), *the district court has no discre-*

*tion*, the judgment is either void or it is not." 136 F.3d at 1005 (emphasis added). The court found that "[u]nlike motions pursuant to other subsections of Rule 60(b), Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not." *Id.; see also United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657 (1st Cir. 1990). A majority of circuit courts have expressly stated that *de novo* review is appropriate because a district court has no discretion with regard to a Rule 60(b)(4) motion, as it must grant the motion if jurisdiction is lacking.[13]

Although the Fourth Circuit has not expressly stated that the threshold requirements are inapplicable with regard to Rule 60(b)(4) motions, the court's use of *de novo* review strongly indicates that these requirements, which necessitate the use of discretion by the district court, are not applicable in this situation. Further, in the vast majority of its opinions regarding Rule 60(b)(4) motions, the Fourth Circuit has not even mentioned the threshold requirements.[14] *See, e.g., Foster v. Arletty 3*

judgment pursuant to Rule 60(b) for an abuse of discretion. But where, as here, the district court denied a Rule 60(b)(4) motion to set aside a judgment as void, our review is de novo.") (internal citations omitted).

13. *See United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir.1990) (finding that regardless of timeliness, prejudice, or exceptional circumstances, under Rule 60(b)(4) relief must be granted if judgment is void); *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir.1998); *Jalapeno Prop. Mgt., LLC v. Dukas*, 265 F.3d 506, 515 (6th Cir.2001) ("Under Rule 60(b)(4) a deferential standard of review is not appropriate because [i]f the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).") (internal quotations omitted); *Chambers v. Armontrout*, 16 F.3d 257, 260 (8th Cir.1994) ("[Rule] 60(b)(4) authorizes the district court to grant relief from void judgments; relief from void judgments is not dis-

cretionary."); *Orner v. Shalala*, 30 F.3d 1307, 1310 (10th Cir.1994) ("Furthermore, when Rule 60(b)(4) is applicable, relief is not a discretionary matter; it is mandatory.") (internal quotations omitted); *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir.2001) (finding that Rule 60(b)(4) motions "leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not") (internal quotations omitted); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441–42 (D.C.Cir. 1987) (finding that "under Rule 60(b)(4), if the judgment is void, relief is mandatory.... A party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judgment treated for what it is, a legal nullity") (internal quotations omitted).

14. Moreover, the cases that do mention the threshold requirements with regard to Rule 60(b)(4) motions are unpublished, and the court has found almost as a matter of course

*Sarl,* 278 F.3d 409 (4th Cir.2002); *In re Heckert,* 272 F.3d 253 (4th Cir.2001); *Schaffer,* 731 F.2d 1134; *Armco, Inc.,* 733 F.2d 1087. Based on these considerations and the overwhelming consensus of other circuit courts, this court concludes that if a judgment is void for lack of personal jurisdiction, the district court must grant the Rule 60(b)(4) motion, without consideration of timeliness, unfair prejudice, or exceptional circumstances.[15]

### 2. If Threshold Requirements Are Applicable

■ However, even if the threshold requirements were applicable, based on Fourth Circuit analysis of these factors with regard to a Rule 60(b)(4) motion, these factors have been met.

### a. Timeliness

As noted above, while most motions brought under Rule 60(b) must be brought within a reasonable time, *McLawhorn v. John W. Daniel & Co., Inc.,* 924 F.2d 535, 538 (4th Cir.1991), the Fourth Circuit has found that a Rule 60(b)(4) motion may be brought at anytime. *In re Heckert,* 272 F.3d at 256–57 ("Heckert, however, filed the motion under [Rule] 60(b)(4), which is not subject to the reasonable time limitations imposed in the other provisions of Rule 60(b)."). In *Heckert,* the court found that the Rule 60(b)(4) motion was timely even though it was brought eight years after the judgment at issue had been entered. *Id.* In this case, the Motion to Set Aside the Default Judgment was made approximately six months after the entry of default judgment. The court concludes that Groupe Kirie's motion is timely.

### b. Meritorious Defense

The Fourth Circuit has stated that "[a] meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 812 (4th Cir.1988). The court noted that " '[t]he underlying concern is ... whether there is some possibility that the outcome ... after a full trial will be contrary to the result achieved by the default.' " *Id.* (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2697, p. 531 (2d ed.1983)).

In this case, Group Kirie has set forth at least one meritorious defense—lack of personal jurisdiction.

### c. Exceptional Circumstances

Relief under Rule 60(b) "is extraordinary and is only to be invoked upon a showing of exceptional circumstances." *Compton v. Alton S.S. Co., Inc.,* 608 F.2d 96, 102 (4th Cir.1979). However, in the Rule 60(b)(4) context, Fourth Circuit case

---

that the requirements have been met. *See Choice Hotels Int'l, Inc.,* 125 F.3d 847, 1997 WL 600061 at *1 n. 2 (Table). In *Helga v. Bonney,* 117 F.3d 1413, 1997 WL 407831 at *9 (4th Cir.1997) (Table), the court first determined whether it had personal jurisdiction over the defendants and then, at the very end of its analysis, determined whether the threshold requirements had been met. Not surprisingly, the court found that the threshold requirements had been met.

**15.** Other district courts in this circuit have also reached this conclusion. *See Molinary v.*

*Powell Mountain Coal Co., Inc.,* 76 F.Supp.2d 695, 699 (W.D.Va.1999) ("Rule 60(b)(4) is not subject to any time limitation, and the court has no discretion in determining whether to grant or deny a Rule 60(b)(4) motion—if the judgment is void, the court must grant relief."); *Marquette Corp. v. Priester,* 234 F.Supp. 799, 802 (D.S.C.1964) ("Under clause (4) the only question for the court is whether the judgment is void; if it is, relief from it should be granted.") (internal quotations omitted).

652

law suggests that a judgment void for lack of personal jurisdiction presents the exceptional circumstances needed to grant the motion. *See Garcia Financial Group, Inc.*, 3 Fed.Appx. at 88 (Table).

### d. Unfair Prejudice

Finally, the Fourth Circuit has found that "[t]he prejudice factor is of lesser importance," noting that while the court should consider prejudice, it should not give controlling consideration to this prong. *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir.1993). The court has consistently held that increased costs or the loss of a quick victory does not constitute prejudice. *See id.; Augusta Fiberglass Coatings, Inc.*, 843 F.2d at 812.

In this case, both parties acknowledge that the statute of limitations has run on plaintiff's claim. If Groupe Kirie's motion is granted, then plaintiff will most likely be precluded from bringing suit against Groupe Kirie in a different forum where there is personal jurisdiction over the company. While there is certainly substantial prejudice to plaintiff, the prejudice results from plaintiff's tactical decision to sue Groupe Kirie in a forum where personal jurisdiction was questionable. As such, the prejudice is of plaintiff's own making.

### III. Conclusion

The court concludes that it does not have personal jurisdiction over Groupe Kirie because its website and advertisement by its American distributor in national boating journals do not provide minimum contacts with this forum. Further, the court concludes that a judgment rendered by a court without personal jurisdiction is a legal nullity, and this court must therefore grant the Rule 60(b)(4) motion.

For the reasons set forth above, it is therefore **ORDERED** that Groupe Kirie's Motion to Set Aside the Default Judgment be **GRANTED**.

It is further **ORDERED** that the claim against Groupe Kirie be **DISMISSED** for lack of personal jurisdiction.

**AND IT IS SO ORDERED.**